IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY PRATT,

    Petitioner,                    Case No. 2:06-cv-00188 ALA (HC)

    vs.

MARTIN VEAL, et al.,

    Respondents.                 ORDER

_____/

    Pending before the Court are Larry Pratt's ("Petitioner") application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a) (doc. 1), Respondent's Answer (doc. 9), and Petitioner's Traverse (doc. 10). Also before the Court are the parties' supplemental briefs filed in response to this Court's December 19, 2007 order requesting additional briefing on the applicability of *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007), if any, to this matter. For the reasons discussed below, Petitioner's application is denied.

**I**

    On November 27, 1974, a Sacramento County Superior Court jury convicted Petitioner of murder in the first degree, conspiracy to commit murder, and possession of a sawed-off shotgun. He was sentenced to some seven years to life imprisonment.

    On March 12, 2004, the Board of Prison Terms ("BPT") decided that he was unsuitable

1

for release on parole.

On August 4, 2004, Petitioner filed a petition for habeas corpus relief in the Sacramento County Superior Court. The Sacramento County Superior Court denied his petition on September 16, 2004. The order reads as follows:

> The petition for writ of habeas corpus has been filed and considered.
>
> It is ORDERED that the petition for writ of habeas corpus is DENIED.
>
> Petitioner challenges his March 12, 2004 denial of parole by a panel of the Board of Prison Terms.
>
> The court notes at the outset that because the Board of Prison Terms has repealed the administrative appeal process for denials of parole (see former 15 Cal. Code Reg. § 2052 (c) (repealed effective May 1, 2004)), there is no requirement at this time that petitioner have exhausted any administrative remedy to appeal the denial of parole in this case.
>
> Petitioner first claims that petitioner was unlawfully denied parole based solely or primarily on an unchanging factor, that of the heinousness of the crime. He relies on Biggs v. Terhune (9th Cir. 2003) 334 F.3d 910 in support of his claim.
>
> Biggs v. Terhune actually held that a California inmate may be denied parole based solely on the commitment offense itself, that it may constitute the necessary "some evidence" to support the finding of unsuitability for parole. Biggs did state in dicta that at some point in time if the inmate has been demonstrating exemplary behavior and that he or she has been rehabilitated, that a denial of parole based solely on the commitment offense may raise serious questions. That, however, was only dicta, and the Ninth Circuit did not elaborate any further on the matter, thus shedding no light on whether, even then, it would indeed constitute a due process violation.
>
> In any event, Biggs is not binding on this court. Although Ninth Circuit opinions in general may present persuasive authority on a subject, California courts still may choose not to follow a decision such as Biggs (see generally People v. Bradley (1969) 1 Cal.3d 80, 86; see also Etcheverry v. Tri-Ag Service, Inc. (2000) 22 Cal.4th 320, 321 [reaffirming Bradley rule]).
>
> Rather, California courts are bound under Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455 to follow the California Supreme Court decision in In re Rosenkrantz (2002) 29

2

Cal.4th 616, that a denial of parole is not arbitrary and capricious if it is based on "some evidence" to support the conclusion that petitioner would pose an unreasonable risk of danger to society or a threat to public safety if he were to be released from prison at this time, and that the commitment offense alone, when the commitment offense is particularly egregious, may constitute that "some evidence."

In this case, the commitment offenses involved the shootings of three people during two incidents, that were religiously and racially motivated. Specifically, petitioner admittedly had joined the Nation of Islam, and had been commanded to shoot white people by his superiors in the organization, and he complied by participating in these three random shootings that had injured the victims and killed one of the victims while that victim was sitting in a chair near a window in his home. These shootings could reasonably have been viewed, as they were by the Board of Prison Terms panel at petitioner's March 12, 2004 hearing, as being particularly egregious; indeed, had the crimes been committed under current law, petitioner could have been charged with a Penal Code § 190.2 (a) (16) special circumstance and subjected to punishment of either death or life imprisonment without possibility of parole for the murder. Under <u>Rosenkrantz</u>, denying parole on this basis alone, even after petitioner has served 30 years in prison, is not violative of the law. Further, petitioner admitted at the parole hearing that he knows that the Nation of Islam still exists and that he could see himself being in contact with some of its members if he were paroled. He also stated that one of his parole plans was to locate in San Francisco, not the county of his commitment offenses, to be employed at a Muslim center run by a former "death row" Muslim inmate who remains on parole, thereby establishing a working relationship with a parolee; further, he failed to show that he had a place to live in that area upon release. His alternative parole plan was to live with family in Sacramento, the county of commitment, or in Vallejo, but he had no employment plans for either of these locations. Because the record showed not only the egregiousness of his religiously and racially motivated crimes, but also the admitted possibility of coming into contact with past or present members of the Nation of Islam and a lack of acceptable parole plan, there was more than "some evidence" on the record to give rise to a reasonable conclusion that even though 30 years have passed from the crimes, petitioner still remains an unreasonable risk of danger to society if he were to be released.

Petitioner next claims that his Eighth Amendment, Ninth Amendment, and due process rights were violated by an "intentional destruction" or "removal" of documents from his central file, of his completion certificates of on various vocation and educational matters and of letters from his family in support of his parole.

3

Petitioner attaches no reasonably available documentary evidence to show that any document was missing from his central file due to any "intentional" conduct on anyone's part, requiring denial of the claim (In re Harris (1993) 5 Cal.4th 813, 827 fn. 5). Nor does he show that he availed himself of his rights under Penal Code § 3041.5 (a) (1) to inspect his file within 10 days before his parole hearing and to object to any matter regarding the file. Nor does he show that his attorney, at the hearing, could not have shown the missing documents to the panel during the hearing or asked for a postponement until the missing documents could be restored to the file and considered in the parole determination.

Regardless of whether items were missing from petitioner's central file, it does not appear that it would have made a difference in the outcome of the hearing even if the items had been petitioner's file. As explained above, petitioner's commitment offenses were particularly egregious and his parole plans unacceptable. As for petitioner's ability to get a job other than at the San Francisco Muslim Center (an unacceptable plan due to lack of housing, wrong county, and associations with parolees), even if the vocation and education papers had been in the central file, they were all over 14 or 15 years, old, with nothing to evidence any recent training, particularly in the field of computers that has seen such a vast change in the past 15 years. Having letters from his family attesting to his being able to live with them, or having completion certificates over 14 or 15 years old, placed in his file simply would not have made a difference in the panel's finding of unsuitability for parole.

Petitioner next claims that his due process rights were violated by the panel's questioning him about why an earlier parole date he had been granted in 1981 had been rescinded, as that had been based on unreliable evidence.

Regardless of whether the panel properly raised the matter, it is clear that the panel did not rely on the latter in any manner in reaching its conclusion that petitioner was not suitable for parole. Thus, the claim fails (In re Bower (1985) 38 Cal.3d 865).

Petitioner finally claims that his Eighth Amendment, Ninth Amendment, and due process rights have been violated, in that he was "informed by board members, off the record, that they have no intentions to release him at present due to his being of the Muslim faith, and the fact of the political climate against Muslims."

Petitioner fails to state with particularity the facts upon which he is relying to justify relief (In re Swain (1949) 34 Cal.2d 300). He fails to state which board members made this statement to him, whether or not they were members of the panel that was making his parole determination, or when the statement was made in relation to his hearing. Nor does he support this contention with

4

> any reasonably available documentary evidence or affidavits from anyone, including himself, who may have heard the alleged statement (In re Harris (1993) 5 Cal.4th 813, 827 fn.5). Nor does he place it in any context. For example, even if it were true, if it was made before the hearing and was made out of confusion over the relationship between the Muslim faith and the Nation of Islam, that could have been clarified during the hearing itself when petitioner specifically addressed that question and stated that he no longer subscribed to some of the views of the Nation of Islam that differed from the Muslim faith. As such, the claim is denied.

Petitioner filed a petition for state habeas corpus relief in the California Court of Appeal, Third Appellate District on October 29, 2004. He raised the same claims he presented to the Sacramento County Superior Court. The Court of Appeal summarily denied the petition on November 10, 2004.

On December 14, 2004, Petitioner filed a petition for habeas corpus relief before the California Supreme Court raising the same claims he presented to the Sacramento Superior Court. The California Supreme Court denied his petition on December 14, 2005.

In determining whether the California courts erred in holding that Petitioner had failed to demonstrate that his federal constitutional rights had been violated, this Court must look to the Alameda County Superior Court's decision as the last reasoned state court opinion addressing Petitioner's contentions. See *Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002) (explaining that when a subsequent request for review is denied without comment, a federal court must look to the last state court decision that considered the merits of the claims).

Petitioner filed a timely application for habeas corpus relief in this Court on January 27, 2006.

## II

### A

An application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "shall not be granted with respect to any claim that was adjudicated on the merits" in state court unless the adjudication of the claim:

5

  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**B**

  Petitioner alleged in his traverse that the BPT deprived him of his liberty in violation of the Due Process Clause of the Fourteenth Amendment in denying him release on parole without some evidence that he poses "an unreasonable risk to public safety." He argues that the BPT failed to consider substantial evidence of his suitability for release from prison by relying on the unchanging factor of the exceptionally callous, violent, brutal nature of his offense in denying him a parole release date. He asserts that "[t]he Board's failure to weigh the evidence of suitability on the determination that he was unsuitable for parole further supports the finding that its decision was arbitrary and capricious and in contradiction to the applicable statutes and regulations." He also alleged in his traverse that denying him a parole release date amounts to cruel and unusual punishment in violation of the Eighth Amendment.

  In the answer to Petitioner's application for a writ of habeas corpus pursuant to § 2254 (a), Respondent maintains that Petitioner "does not have a federally protected liberty interest in parole." Respondent also argues that the Ninth Circuit Court of Appeals decisions holding that "'some evidence' must support a parole decision" is not binding on this Court because that rule has not been clearly established by the United States Supreme Court as required by 28 U.S.C. § 2254(d)(1). This contention is contrary to the Ninth Circuit's decision in *Sass v. Cal. Bd. of Prison Terms*, 46 F.3d 1123, 1127-28 (9th Cir. 2006). This Court must reject Respondent's contention under compulsion of Ninth Circuit precedent that provides that "California's parole scheme gives rise to a cognizable liberty interest release on parole." *Id.* at 1127 (citation

omitted).

**C**

In *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), the Supreme Court held that "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." (Citation omitted). This Court is bound by the Ninth Circuit's holding that the "some evidence" standard announced in *Hill* applies to parole release proceedings. *Sass*, 461 F.3d at 1128-29.

"To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Id.* at 1128 (quoting *Hill*, 472 U.S. at 455-56). "*Hill*'s some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" *Id.* at 1129 (quoting *Hill*, 472 U.S. at 457).

In *Irons v. Carey*, 505 F.3d 847, 853 (9th Cir. 2007) the Court held that

> where, as here, there is some evidence to support a finding that "the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering" and the "motive for the crime is inexplicable or very trivial in relation to the offense," Cal. Code Regs., tit. 15 § 2402(c)(1)(D)-(E), we cannot say that the state court unreasonably applied *Hill*'s "some evidence" principle.

In *Irons*, the record showed that the BPT relied on the commitment offense in determining that the prisoner was not suitable for release on parole. *Id.* at 852.

The Ninth Circuit limited its holding in *Irons* as follows: "All we held in [*Sass*, 461 F.3d at 1125 and *Biggs v. Terhune*, 334 F.3d 910, 912 (9th Cir. 2002)] and all we hold today, therefore, is that, given the particular circumstances of the offenses of these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their

7

minimum terms." *Irons*, 505 F.3d at 853-54.  In an unusual comment in *Irons*, the panel expressed its aspiration that some future court decision will conclude that the BPT has the duty to grant parole where "there was substantial evidence in the record demonstrating rehabilitation." *Id.* at 854.

The Court stated:

> We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes.

*Id.*

The *Irons* panel did not cite any authority to support its prognostication that the denial by the state court of habeas corpus relief, under such circumstances, would be "contrary to, or involve[] an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" in violation of 28 U.S.C. § 2254(d)(1).  No presently binding Ninth Circuit decision has fulfilled the prediction of the *Irons*'s panel.

In the precedential portion of the *Irons* decision, the Court held that "we must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence.'" *Irons*, 505 F.3d at 851.  Under California law, a prisoner is unsuitable for parole if:

> (1)  the prisoner committed the offense in an especially heinous, atrocious, or cruel manner;
> (2)  the prisoner has a previous record of violence;
> (3)  the prisoner has an unstable social history;
> (4)  the prisoner has committed sadistic sex offenses;
> (5)  the prisoner has a history of mental or psychological problems; and
> (6)  the prisoner has engaged in serious misconduct while in prison.

Cal. Code Regs., tit. 15 § 2402(c).

Accordingly, this Court must determine whether "some evidence" supported the BPT's decision that Petitioner was not yet suitable for parole release because he would "pose an

1  unreasonable risk of danger to society if released from prison. Code Reqs. tit. 15 § 2402 (c).

## D

The BPT's 2004 decision reads as follows:

> **PRESIDING COMMISSIONER ANGELE:** The Panel has reviewed all information received from the public and relied on the following circumstances that you're not yet suitable for parole and would an unreasonable risk of danger. The offense was carried out in an exceptionally violent and brutal manner. There were multiple victims attacked, injured or killed in separate incidence. The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering and life. The motive for the crime was inexplicable. These conclusions are drawn from the Statement of Fact where the inmates and his crime partners, between April 20th, 1974 and April 24th, 1974, as members of the Nation of Islam, supporting religious and racial motivation, did arm themselves with a shotgun and shoot the 20th, of April (indiscernible) one Gerald Bakarich, B-A-K-A-R-I-C-H, who was wounded, and then on the 21st of April the inmate did personally shoot one Lloyd Rebel, R-E-B-E-L, who was wounded. Ammunition used at that time was birdshot, but then they went to the store where they purchased more ammunition, double aught buck. And on the 24th of April they did shoot and kill one Joseph Bellmar, B-E-L-L-M-A-R, age 25, who was sitting in the chair. He was seen through a window. Once again, these crimes were racially motivated due to alleged harassment of the Nation of Islam, which occurred in a different city than the city of the shooting. The inmate did supply the shotgun and did provide the vehicle. The inmate has an insignificant criminal history. He's been arrested for selling fish without a license. This was an activity of the Nation of Islam at the time. The inmate has programmed in an adequate manner, although there is no evidence of him completing a vocation in the file. The psychological evaluation appears to be supportive. The last psychological evaluation done on 5/28/02 by Crawford, C-R-A-W-F-O-R-D, places the degree of threat as extremely low. Prior to –The report indicates that he's a good candidate for parole. However, the inmate does lack realistic parole plans. He submitted a letter today from the Muslim community indicating they they're willing to train and to employ him in the capacity of counseling at the San Francisco Muslin Community Center. Quote, "We are offering him training and employment in our self-help action resource project." However, the correctional counsel indicates that the inmate is planning to live with his brother in Sacramento, or his mother, parents, in Vallejo, yet there are no letters to support that. And that is a very important issue to this Panel in that we certainly need to have a place for the inmate to go that is verifiable prior to him getting a date. The hearing Panel notes that responses to 3042 Notices indicate opposition to a finding of parole suitability, specifically the District Attorney of Sacramento County who had a

member here who voiced opposition to a parole suitability. The inmate should be commended for his discipline. He's not had a single 115 since 1983. The last one he had was for disorderly conduct and intent to assault a correctional officer. His last 128 counseling chrono was in 1996. The denial is for a period of one year. In that one year we ask that you remain disciplinary-free, that you secure verifiable parole plans. Looking at the – It's the only thing that I see you lack. I don't know what the other Commissioners will say when you come back in a year, but that's all I see it is. Commissioner, any comments?

**DEPUTY COMMISSIONER ZIEGLER:** I wish you luck, sir.

**INMATE PRATT:** Thank you.

**PRESIDING COMMISSIONER ANGELE:** That does conclude this hearing. The time is approximately 12:35. I want to wish you the best of luck, sir.

**E**

Under *Irons*, this Court must look to California law to determine whether the BPT's decision that Petitioner was not eligible for release was supported by some evidence of one of the factors set forth in § 2402(c). The California Court of Appeal First Appellate Division held in *In re Caswell*, 92 Cal. App. 4th 1017 (2001) that the BPT's decision that the release date granted to a prisoner should be rescinded because there was some evidence in the record that he had committed an atrocious crime. The facts in *Caswell* closely parallel the evidence acted upon by the BPT in the instant matter.

The Court of Appeal held in *Caswell* that "a prisoner's refusal to admit participation in the crime on matters of conflicting evidence does not necessarily constitute unsuitability for parole or mandate recession." *Id.* at 1033. The Court in *Caswell* relied on Section 2236 of Title 15 of the California Code of Regulations for this proposition. Section 2236 reads as follows:

/ / /

> The facts of the crime shall be discussed with the prisoner to *assist in* determining the extent of personal culpability. The board shall not require an admission of guilt to any crime for which the prisoner was committed. A prisoner may refuse to discuss the facts of the *crime in which instance a decision shall be made based on the other information available* and the refusal shall not be held against the prisoner. (emphasis added).

10

The Court noted in *Caswell* that the prisoner "acknowledged responsibility and demonstrated remorse." *Id.* The prisoner in *Caswell* testified that "the crimes escalated because of his 'inability to control' and his 'omission to do anything to counter what [Englund] want[ed] [him] to do.'"

In *Caswell*, the prisoner was given a release date effective in September 2000 by a panel of the BPT. The panel found Caswell suitable for parole based on:

> his minimal criminal record and lack of significant history of violent crimes; his stable social history, his participation in education programs, self-help programs, and vocational programs while in prison; his maturity and age; his parole plans, including job offers and family support; his positive institutional behavior; and favorable psychological evaluations.

*Id.* at 1024. The BPT, sitting en banc, reviewed the grant of the parole release date. "[T]he Board ordered that a parole rescission hearing be conducted to determine whether there was good cause to rescind Caswell's parole." *Id.* The Board identified three reasons for ordering the parole rescission hearing: "(1) the extreme seriousness of the crime; (2) Caswell's minimization of his involvement in the commitment offenses; and (3) Caswell's lack of remorse."

A panel of the BPT held a rescission hearing in March 1999. The panel rescinded Caswell's parole date. It based its decision on "the extreme seriousness of the crimes and Caswell's minimization of his involvement." *Id.* at 1025. The rescission panel determined, however, that Caswell had shown "sufficient remorse." *Id.*

The Board's appeals unit denied Caswell's petition for relief. The Solano County Superior Court granted Caswell's petition for habeas corpus relief and ordered the Board to reinstate Caswell's parole release date. *Id.* The Board appealed to the California Court of Appeal.

The California Court of Appeal held that "parole may be rescinded if the granting panel failed to adequately consider the gravity of the [offense]." *Id.* at 1027 (citing *In re Johnson*, 35 Cal. App. 4th 160, 168-69 (1995)). The Court reversed the judgment of the Solano County

11

1  Superior Court on the sole ground that there was some evidence in the record that the 1986 panel
2  that ordered his release "failed to adequately consider the gravity of Caswell's criminal acts." *Id.*
3  at 1034.
4       Thus, under the California Court of Appeal's interpretation of that state's law in <u>Caswell</u>,
5  a parole release date may be denied if there is some evidence to support the BPT's determination
6  that the gravity of the offense poses an unreasonable threat to public safety, notwithstanding
7  undisputed evidence of a prisoner's positive institutional behavior and participation in
8  educational and self-help programs.
9       In this matter, BPT found that Petitioner was unsuitable for parole and that he would
10 present an unreasonable risk of danger if he were released.  The BPT found that his offenses were
11 carried in an exceptionally violent and brutal manner.  Petitioner and his crime partners were
12 members of the Nation of Islam.  Petitioner testified before the BPT that he was ordered to kill
13 whites by a lieutenant of the Nation of Islam.  They murdered one person, and wounded two
14 others using a shotgun furnished by Petitioner.  Petitioner and his crime partners randomly
15 selected their victims in Sacramento County to avenge the alleged injury inflicted by police in the
16 City of Berkeley on a member of the Nation of Islam.  None of their victims was connected to the
17 alleged mistreatment of the member of Islam in another county.  Each of the victims was white.
18 The murder victim was shot through a window while he sat in a chair in his own home.  The BPT
19 found that Petitioner's crimes were racially motivated.  It characterized his conduct as "an
20 exceptionally callous disregard for human suffering and life."
21      Petitioner's correctional counselor reported to the BPT that "the inmate would pose an
22 unknown degree of threat to community if released."  A representative of the Sacramento County
23 District Attorney's Office recommended against release or parole because Petitioner's crimes
24 were "racially motivated" and "cowardly attacks on defenseless victims whose only offense was
25 being white."  The prosecutor also expressed concern that Petitioner acknowledged that he is still
26 acquainted with members of the Nation of Islam and will have contact with them when he is

released.

This Court has reviewed the record of the proceedings before the BPT. The BPT expressly relied on the fact that it is undisputed in denying Petitioner a parole release date, the Petitioner's offense was carried out in an exceptionally violent and brutal manner with a callous disregard for human life solely because his randomly selected victims were white. Section 2402 (c) provides that a prisoner is unsuitable for parole if "(1) the prisoner committed the offense in an especially heinous, atrocious, or cruel manner." Clearly, some evidence supported the BPT's finding.

The BPT also found that Petitioner lacked unrealistic parole plans. While Petitioner submitted a letter that the San Francisco Muslim Community Center would train and employ him as a counselor, he advised his counselor that he planned to live with his brother in Sacramento, or his parents in Vallejo.

To grant Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (a), this Court would have to ignore the undisputed evidence that Petitioner committed the offense in an especially heinous, atrocious, and cruel manner. The Supreme Court has not determined that the denial of a release on parole of a prisoner serving a life term is a violation of the Eighth or the Fourteenth Amendment where there is some evidence that he poses an unreasonable risk of danger to society if released from prison, notwithstanding the fact that he has received a psychological evaluation that indicates he is a good candidate for parole. Pursuant to 28 U.S.C. § 2254(d), this Court cannot grant an application for habeas corpus relief pursuant to 28 U.S.C. § 2254(d) unless the state court's judgment is contrary to a clearly established Federal law as determined by the Supreme Court of the United States.

/////
/////
/////
/////

**Conclusion**

It is hereby ORDERED that Petitioner's application for habeas corpus relief is DENIED.

/////

DATED: May 29, 2008

/s/ Arthur Alarcón
UNITED STATES CIRCUIT JUDGE
Sitting by Designation